824 P.2d 761

STATE of Arizona, Appellee,

v.

Edward Donald TYKWINSKI, III, and Jonathon Andrew Newell, Appellants.

Nos. 1 CA–CR 89–1297, 1 CA–CR 89–1494.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 19, 1991.

Review Denied March 3, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Eric A. Bryant, Asst. Atty. Gen., Phoenix, for appellee.

Bret H. Huggins, Show Low, for appellants.

## OPINION

CLABORNE, Presiding Judge.

Appellants Edward Donald Tykwinski, III and Jonathon A. Newell were convicted of the crimes of possession of marijuana and possession of drug paraphernalia, both class six undesignated felonies. The trial court sentenced each defendant to a two-year term of probation, a $1,027.50 fine and forty hours of community service.

On appeal, appellants argue that the trial court erred in denying their motion to suppress evidence seized during a stop of their vehicle at a roadblock. The appellants claim that the stop violated their rights under the fourth amendment to the United States Constitution and art. II, § 8 of the Arizona Constitution, because the police lacked an individualized suspicion that they were involved in the crime for which the roadblock was established.

We hold that these constitutional provisions do not require law enforcement, when conducting a roadblock stop, to have a founded or individualized suspicion that the occupants of a vehicle were involved in the crime under investigation before the vehicle may be validly stopped. We affirm.

### FACTS

On December 31, 1988, at approximately 7:10 p.m., Navajo County Sheriff's Officer Robert Varner was fatally shot in his patrol car on the eastbound side of Interstate 40 near Winslow, Arizona. An eyewitness gave the police a minimal description of two suspects, indicating they were driving a small brown vehicle. Approximately forty minutes later, and twenty-seven miles east of the scene, a vehicle matching the eyewitness description was observed. When the police approached the vehicle, the occupants began firing. Thereafter, the suspects abandoned their vehicle at a nearby farmhouse, and accosted the residents at gunpoint, taking their vehicle.

Navajo County Sheriff's deputies chased the stolen car and shortly thereafter, the suspects crashed the stolen vehicle into an irrigation ditch. They then fired numerous rounds at the pursuing officers and fled on foot. The police ordered roadblocks. The general vicinity was searched, and homes in the area were canvassed throughout the night. The next morning, police found footprints leading away from the abandoned stolen vehicle; one set headed east and one set headed south or west.

The police set up one of the roadblocks on U.S. 180, seven or eight miles east of the location where the suspects crashed the stolen automobile. It appears that this

particular roadblock was maintained from at least 5:00 a.m. on January 1, 1989, until later that same afternoon. During this period approximately one hundred eastbound vehicles were detained. Department of Public Safety Officer Monty Long testified that the passenger areas and trunks of all vehicles were inspected for the suspects based upon the suspicion that they could be in any eastbound vehicle. Each detention lasted no longer than one to two minutes.

The appellants' vehicle arrived at the roadblock at approximately 10:15 a.m. As Officer Long approached, the driver, appellant Newell, rolled down his window. Officer Long smelled the odor of burnt marijuana coming from inside the vehicle. At this point Officer Long asked Newell to step out of the vehicle. Newell was patted down and asked if he had any marijuana. Newell responded by handing the officer a film canister which contained marijuana. Both appellants were detained and their vehicle searched.

The appellants moved to suppress all evidence that was seized during the stop, arguing that the initial stop was unconstitutional. The trial court held an evidentiary hearing on the motion and, in a detailed opinion, concluded that the manner and scope of the roadblock search were justified and denied the motion. The appellants waived their right to a jury and submitted the matter to the court based upon police reports, grand jury testimony and the transcript of the hearing on the motion to suppress. The appellants were found guilty and timely notices of appeal followed. We consolidated the appeals since the issue in each is identical.

The only issue on appeal is the propriety of the initial stop of the vehicle. It is conceded that once Officer Long smelled the marijuana, probable cause existed to search the appellants and the vehicle.

## DISCUSSION

The appellants contend that the stopping of their vehicle at the roadblock constituted an unreasonable search and seizure in violation of both the United States and Arizona Constitutions. Their sole argument is that Officer Long was required to form an individualized or founded suspicion that they were involved in the shooting death of Officer Varner or the shooting at the other officers before their vehicle could have been legally stopped. Because the officer did not have such a suspicion, the appellants argue that the evidence seized during the stop should have been suppressed.

■ Roadblock stops are considered seizures within the meaning of the fourth amendment.[1] *State v. Superior Court (Simmons)*, 143 Ariz. 45, 47, 691 P.2d 1073, 1075 (1984). When the police stop a vehicle and detain its occupants, a seizure occurs regardless of the reason for the stop or the length of the detention. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The issue is whether the stop was "reasonable."

The reasonableness of a search or seizure that is less intrusive than an arrest depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). There must be a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest and the severity of the interference with individual liberty." *Id.* at 50–51, 99 S.Ct. at 2640.

■ Appellants are correct in claiming that a police officer may not conduct an investigatory stop of a vehicle absent an individualized or founded suspicion that the occupants are involved or have been involved in criminal activity. *State v. Acosta*, 166 Ariz. 254, 256, 801 P.2d 489, 491 (App.1990). This rule, however, is not an absolute. The fourth amendment imposes no "irreducible requirement" of individual-

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

ized or founded suspicion. *United States v. Martinez–Fuerte*, 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976).

The Supreme Court has on more than one occasion considered what is required by the fourth amendment before the police may validly stop a motorist. In *United States v. Brignoni–Ponce*, the Court concluded that Border Patrol agents could not randomly stop vehicles in the border area in search of illegal aliens without some suspicion that the vehicle stopped was carrying illegal immigrants. 422 U.S. 873, 882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). Although the Court recognized the public's strong interest in preventing the illegal entry of aliens at the Mexican border, it was unwilling to permit the Border Patrol to stop vehicles absent some reasonable suspicion to justify the stop. *Id.* at 882, 95 S.Ct. at 2580. The reasonableness requirement of the fourth amendment, said the Court, "demands something more [in the context of border area stops] than the broad and unlimited discretion sought by the Government." *Id.* at 882, 95 S.Ct. at 2580–81.

> To approve roving-patrol stops of all vehicles in the border area, without any suspicion that a particular vehicle is carrying illegal immigrants, would subject the residents of these and other areas to potentially unlimited interference with their use of the highways, solely at the discretion of Border Patrol officers.

*Id.* at 882, 95 S.Ct. at 2581.

In *Delaware v. Prouse*, the Court held unconstitutional the use of random stops in order to check the driver's license and automobile registration absent some articulable and reasonable suspicion that the driver is unlicensed, that the automobile is unregistered or that there has been a violation of some other law. 440 U.S. at 663, 99 S.Ct. at 1401. The Court analogized the random stops to the roving-patrol stops prohibited in *Brignoni–Ponce*, and concluded that random stops on city streets are no less intrusive than roving-patrol stops on a major highway. *Id.* at 657, 99 S.Ct. at 1398.

> Both of these stops generally entail law enforcement officers signalling a moving

automobile to pull over to the side of the roadway, by means of a possibly unsettling show of authority. Both interfere with freedom of movement, are inconvenient, and consume time. Both may create substantial anxiety.

*Id.*

In contrast, the Court held in *Martinez–Fuerte* that border agents could stop a vehicle in search of illegal aliens at a fixed checkpoint and briefly question its occupants absent "any individualized suspicion" that the vehicle contained illegal aliens. *Id.* 428 U.S. at 562, 96 S.Ct. at 3085. The Court concluded that requiring reasonable suspicion in this situation would not serve the public's interest in locating illegal aliens. *Id.* at 557, 96 S.Ct. at 3082–83. "[T]he flow of traffic tends to be too heavy to allow the particularized study of a given car that would enable it to be identified as a possible carrier of illegal aliens." *Id.* at 557, 96 S.Ct. at 3083. Furthermore, the reasonableness of the procedures minimized the intrusion on the motorists. *Id.* at 562, 96 S.Ct. at 3085. "Neither the vehicle nor its occupants are searched, and visual inspection of the vehicle is limited to what can be seen without a search." *Id.* at 558, 96 S.Ct. at 3083.

The Court distinguished checkpoint stops from roving patrol stops based upon the subjective intrusion involved in the stop. Although the objective intrusions—namely the stop itself, the questioning, and the visual inspection—are present in each, the subjective intrusion of a checkpoint stop— the generating of concern or even fright on the part of travelers—is "appreciably less" than with a roving patrol stop. *Id.*

> [T]he circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving patrol stop. Roving patrols often operate at night on seldom-traveled roads, and their approach may frighten motorists. At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.

*Id.* (quoting *United States v. Ortiz*, 422 U.S. 891, 894–95, 95 S.Ct. 2585, 2587–88, 45 L.Ed.2d 623 (1975)).

The Arizona Supreme Court has held that the procedures used in a sobriety checkpoint by the Tucson police satisfied the constitutional requirements of the fourth amendment. *State v. Superior Court (Simmons)*, 143 Ariz. 45, 691 P.2d 1073.

Recently, the United States Supreme Court held, in *Michigan Dept. of State Police v. Sitz*, that a state's use of sobriety checkpoints does not violate the fourth and fourteenth amendments to the United States Constitution. 496 U.S. 444, 110 S.Ct. 2481, 2483, 110 L.Ed.2d 412 (1990). The Court concluded that the seizure was reasonable given "the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped." *Id.* at 455, 110 S.Ct. at 2488. As to this latter point, the Court found that the intrusion upon motorists at the sobriety checkpoint was indistinguishable from the checkpoints upheld in *Martinez–Fuerte*. *Id.* at 453, 110 S.Ct. at 2487.

The Washington Court of Appeals relied upon *Brignoni–Ponce, Prouse* and *Martinez–Fuerte* to conclude that police officers are not required to have individualized suspicion before stopping vehicles at a roadblock under circumstances similar to those now before us. *State v. Silvernail*, 25 Wash.App. 185, 190, 605 P.2d 1279, 1283, *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980). Three men had entered the victim's home, held the victim at gunpoint, beat him and burglarized his safe. The home was located on an island and it was believed the suspects would use a ferry to escape. The police established a roadblock at the ferry dock and stopped and searched all cars for the suspects. Silvernail's car was detained as it left the ferry. Evidence of the crime was found in the trunk. Silvernail argued that his detention at the roadblock was illegal because the state failed to establish an individual-

ized suspicion that he was involved in the crime under investigation. The court rejected this argument and concluded that individualized suspicion is not required for a valid stop at a roadblock. *Id.* 25 Wash. App. at 190, 605 P.2d at 1283. The court believed that the roadblock stop was more analogous to a checkpoint stop than a random or roving-patrol stop, even though the scope of the search was somewhat broader than that found at the checkpoints. *Id.*

[T]he momentary intrusion on the traveling public and the brief opening of the car trunk are reasonable even though the very nature of the procedure means that individualized suspicion is absent and the scope of the search is broader than the detention allowed in *Martinez–Fuerte* .... There is no unbridled discretion to establish roadblocks, and any degree of harassment is minimized by the probable cause requirement, the limited scope of the search and the other limits on the authority to use this procedure. The existence of probable cause to believe a felony has been committed justifies the greater intrusion of a limited search of each car for suspects.

*Id.* *Accord*, *United States v. Harper*, 617 F.2d 35 (4th Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980); *Lacy v. State*, 608 P.2d 19 (Alaska 1980).

We agree with the Washington Court of Appeals that the fourth amendment does not invariably require the police to have an individualized suspicion before they may validly stop a vehicle at a roadblock. Although roadblock stops, as all stops, interfere with freedom of movement, are inconvenient and consume some amount of time, we believe that a requirement of individualized suspicion would defeat the public's interest in apprehending suspects who commit serious crimes.

More importantly, the intrusion upon a motorist at a roadblock stop is very similar to the intrusion imposed at the checkpoints upheld in *Martinez–Fuerte, Sitz* and *Simmons*. We recognize that the objective intrusion of the roadblock in the case before us, as in *Silvernail*, is more severe than was present in *Martinez–Fuerte*.

The police, in addition to viewing the occupants of a vehicle, stopped the vehicle and searched both the passenger carrying compartment and the trunk. The objective intrusion, however, is not the critical factor in deciding whether individualized suspicion is required by the fourth amendment. Rather, it is the amount of subjective intrusion that is imposed by the stop. We see no distinction between the subjective intrusion imposed at a checkpoint from that imposed at the roadblock in this case. In both situations, the motorist "can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion." See Martinez–Fuerte, 428 U.S. at 558, 96 S.Ct. at 3083. It was the amount of subjective intrusion which the Court in Martinez–Fuerte concluded distinguished checkpoint stops from roving-patrol stops and permitted the former to be conducted without individualized suspicion.

The appellants' reliance on our supreme court's opinion in State ex rel. Ekstrom v. Justice Court, 136 Ariz. 1, 663 P.2d 992 (1983), is misplaced. In that case, the court affirmed a lower court order which suppressed evidence seized at a sobriety checkpoint on the ground that the roadblock was operated in an unconstitutional manner. Id. at 5, 663 P.2d at 996. Contrary to the appellants' assertion, the court did not hold that an individualized suspicion is a requirement for a valid roadblock stop. Rather, the court struck down the sobriety checkpoint because there was a substantial amount of discretion accorded the officers who conducted the checkpoint and the state's failure to establish the existence of an important state interest. Id. The very next year, the court upheld the use of a sobriety checkpoint in which set procedures were established for the police officers to follow and the sites were chosen by statistical accident data. State v. Superior Court (Simmons), 143 Ariz. at 48–49, 691 P.2d at 1076–77. "Given the gravity of the problem, a compelling need for the state to take strong action against drunk drivers, and the minimal intrusion created by these stops, we hold the stops in this case passed constitutional muster." Id. at 49, 691 P.2d at 72.

Important in the balancing of interests is society's compelling interest to keep a community safe from those who would act against it. When the danger to the community is great and the ability to reduce that danger is questionable and this is measured against an explicit, neutral plan which provides minimal intrusion, the constitutional guarantees of the fourth amendment are not violated. Here, there was a search for armed and dangerous men who had killed a member of the community and shot at others. There was an explicit and neutral plan to discover that clear and dangerous threat to the well-being of the community. The fourth amendment intrusion was short and explicitly planned to ferret out the danger. Such a roadblock, under these circumstances, is not a violation of the fourth amendment. Since no violation occurred, the appellant here cannot complain that his illegal activity was discovered as a result of the legal roadblock.

Whether a roadblock is reasonable must be determined by the balancing test set forth in Brown v. Texas, supra. See Sitz, 496 U.S. at 449, 110 S.Ct. at 2485.

Here, the trial court applied a reasonableness standard and found that the circumstances justified the conduct of law enforcement. The trial court's finding of facts known to the police before the stop are significant to this balancing test.

(1) On the evening preceding the roadblock, two male subjects had fired upon law enforcement officers on three occasions, killing one of them, and expending approximately 200 rounds of 9 MM and AKA-type ammunition.

(2) At gunpoint, the suspects had commandeered a civilian vehicle, which they thereafter crashed into an irrigation ditch approximately six miles west of Holbrook.

(3) The suspects had been proceeding eastbound and footprints from the crash site indicated that one suspect may have continued east, while the other may have proceeded west.

(4) The site of the vehicle crash was near McLaws Road, near the intersection of U.S. 180 and Route 77 in Holbrook. U.S. 180 runs east from that intersection.

(5) The roadblock was ordered by the DPS District Commander and was set up on U.S. 180 approximately eight miles east of Holbrook.

(6) All eastbound vehicles were stopped and searched and each detention lasted approximately one to two minutes.[2]

We agree with the trial court that on balance the roadblock as applied to these defendants was reasonable.

We therefore hold that when a serious crime has occurred, the fourth amendment does not require law enforcement, when conducting a roadblock stop, to have a founded or individualized suspicion that the occupants of a particular vehicle stopped were involved in the crime under investigation. We do not mean to say that roadblocks are constitutionally permitted in all cases. Circumstances may exist which render the roadblock unreasonable. The operation of the roadblock must be closely related to the task of apprehending the suspects in question and its use must be justified under the circumstances presented.

Clearly, the trial judge had sufficient basis to determine that the investigative roadblock stop in this case was not arbitrary or harassing, but justified under the circumstances. *See State v. Jarzab*, 123 Ariz. 308, 310, 599 P.2d 761, 763 (1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980).

■ Appellants also ask this court to find that the roadblock here violated Arizona's constitutional guarantees, independent of any federal violation, based upon the right to privacy provided for under art. II, § 8.[3]

We recognize that Arizona's privacy provision is broader than the fourth amendment. *See State v. Ault*, 150 Ariz. 459, 724 P.2d 545 (1986) (refused to apply inevitable discovery doctrine to permit admission of evidence seized during illegal search of home). The right of privacy, however, is not unqualified nor absolute, but must be considered in light of important state interests. *State v. Bateman*, 113 Ariz. 107, 547 P.2d 6, *appl. denied*, 429 U.S. 1302, 97 S.Ct. 1, 50 L.Ed.2d 32, *cert. denied*, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976). *See State v. Emond*, 163 Ariz. 138, 786 P.2d 989 (App.1989) (criminalization of private possession of child pornography not unconstitutional under art. 2, § 8; state has compelling interest in preventing sexual exploitation of children).

Appellant does not cite to any authority, nor have we uncovered any, which supports the position that Arizona's privacy provision requires individualized suspicion before police may establish a roadblock under the facts presented in this case. In fact, our supreme court's opinion in *State ex rel. Ekstrom v. Justice Court*, 136 Ariz. 1, 663 P.2d 992, indicates otherwise. There, the court recognized that both the fourth amendment to the United States Constitution and art. 2, § 8 of the Arizona Constitution, protect motorists from "harassment by government agents." *Id.* at 2, 663 P.2d at 993. Although the court struck down the use of a sobriety checkpoint under the facts before it, it did not do so on the basis of a lack of individualized suspicion.

## CONCLUSION

We conclude that neither the fourth amendment to the United States Constitution nor art. II, § 8 of the Arizona Constitution require police, when conducting a roadblock stop, to have a founded or individualized suspicion that the occupants of a vehicle were involved in the crime under

---

**2.** Officer Long initially thought defendant Newell was a Mexican male, part of the vague suspect description known at that time. The state did not argue, nor did the lower court rely on this fact to support the existence of reasonable suspicion to stop defendants' vehicle. Therefore, this court does not consider it.

**3.** "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Ariz. Const. art. II, § 8.

investigation before the vehicle may be validly stopped. We also conclude that the use of a roadblock in this case was reasonable. The state had a substantial interest in apprehending suspects who were involved in a serious crime. The intrusion on the individuals stopped was minimal and the detention was brief. The trial court correctly denied the appellants' motion to suppress.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, and have found none. For all of the foregoing reasons, the convictions and sentences imposed are affirmed.

SHELLEY and LANKFORD, JJ., concur.