932 P.2d 293

**In re STEVEN O.**

**No. 1 CA–JV 96–0097.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 28, 1997.

William J. Ekstrom, Jr., Mohave County Attorney by Julia R. Rutherford, Deputy County Attorney, Kingman, for Appellee.

John C. Williams, Prescott, for Appellant.

## OPINION

FIDEL, Judge.

Appellant, a juvenile, argues that the juvenile court improperly denied his motion to suppress contraband seized ·during a warrantless "stop and frisk." Whether an investigatory stop is valid is one question; whether a protective frisk is valid is another. The prerequisite for conducting an investigatory stop is a reasonable suspicion that a person is engaged or about to engage in criminal activity; the prerequisite for conducting a protective frisk is a reasonable suspicion that the suspect may be armed and presently dangerous. We find that the investigatory stop was valid in this case, but that the protective frisk was not. We therefore conclude that the juvenile court improperly denied the juvenile's motion to suppress.

### I. BACKGROUND

While watching a residence for narcotics activity, two undercover sheriffs' officers saw a truck drop two juveniles off at an intersection. The juveniles, Appellant and his companion, walked in one direction, but reversed their path when the truck was out of sight. Appellant entered a house not under surveillance while his companion waited at the corner. Shortly after Appellant entered the house, another person opened the door and looked outside. Minutes later Appellant

emerged, put something in his pocket, and, with his hand still in his pocket, rejoined his companion. As he walked, Appellant kept his head down, but continued looking around him as if "he was trying to keep an eye on everything that was going on."

As the juveniles walked toward the officers, the officers stopped them, identified themselves, and questioned them. One of the officers, Detective Durst, stated that he thought a drug deal had occurred and asked whether the juveniles were carrying drugs. Appellant responded, "We don't have any drugs, and you can't prove it," and began to walk away. Durst grabbed Appellant's arm and said he was going to pat the juveniles down for safety reasons. Appellant's companion submitted, but Appellant attempted to pull away, stating, "I'm a juvenile, you can't do this to me, I want my mom." Durst escorted Appellant to an unmarked police car, patted him down, and identified a pack of cigarettes by touch. Because it is "a petty offense" under Arizona Revised Statutes Annotated ("A.R.S.") § 13–3622 (1989) for a minor to possess cigarettes, Durst treated the cigarettes as contraband and removed them from the juvenile's pants pocket. In the cigarette pack, Durst found a substance later identified as methamphetamine.

Appellant was charged with an act of juvenile delinquency based on possession of a dangerous drug, a class 4 felony. Before the adjudication hearing, Appellant moved to suppress the methamphetamine on the grounds that the stop and frisk constituted an unlawful search and seizure.[1] After hearing Durst's testimony, the juvenile court denied the motion and found Appellant delinquent as charged.

## II. THE INVESTIGATORY STOP

Appellant argues that the investigatory stop was an unreasonable seizure because his acts—walking down a residential street on a summer afternoon, standing on a corner, and visiting a residence—lacked any facial criminal implications. The State counters that the initial stop was not a "seizure," but a "voluntary encounter" not subject to Fourth Amendment protection. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Neither argument accurately characterizes the totality of facts before this court.

If an officer forms a reasonable suspicion that a person is engaged or about to engage in criminal activity, the officer may stop and detain the suspect for investigatory purposes. *Terry v. Ohio*, 392 U.S. 1, 19–22, 88 S.Ct. 1868, 1878–81, 20 L.Ed.2d 889 (1968); *accord State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996). To establish the constitutional validity of an investigatory stop, the officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80; *see also Rogers*, 186 Ariz. at 511, 924 P.2d at 1030 (finding investigatory stop unlawful where officers articulated only that it was dark, that defendant and his companion emerged from bushes and walked down the middle of the street, and that defendant stared at officers).

The standard of "reasonable suspicion" defies precise definition, but requires the "[t]otality of the circumstances—the whole picture—[to] be taken into account." *United States v. Cortez*, 449 U.S. 411, 411, 101 S.Ct. 690, 692, 66 L.Ed.2d 621 (1981). In *Rogers*, our supreme court explained:

"Articulating precisely what 'reasonable suspicion' . . . mean[s] is not possible. [It is a] commonsense, nontechnical concept[ ] that deal[s] with the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' "

186 Ariz. at 511, 924 P.2d at 1030 (quoting *Ornelas v. United States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)). Whether an officer's suspicion of illegal activity is "reasonable" is a mixed

---

1. Appellant also moved to suppress statements that he made during the stop and frisk, and he has appealed the denial of that motion. However, his brief addresses only the suppression of methamphetamine. A party abandons an appellate issue who fails to argue the issue in his brief. *State v. McCall*, 139 Ariz. 147, 163, 677 P.2d 920, 936 (1983). We confine our discussion to the issue that was briefed.

question of law and fact, which we review *de novo*. *See id.* at 510, 924 P.2d at 1029.

■ The State is mistaken in denying that the initial detention was a "seizure." From the outset, Appellant and his companion were not free to leave. When Appellant attempted to walk away, Detective Durst physically restrained him. It was not only reasonable but accurate for Appellant to feel that his freedom was restricted. *See id.* ("The fact that an officer pursued defendant when he did leave shows just how reasonable it was for defendant to believe his freedom was being restricted."). The initial stop was therefore a "seizure" subject to Fourth Amendment analysis.

■ But Appellant too is mistaken in asserting that his conduct gave no basis to suspect that he was engaged in criminal activity. While each of Appellant's singular acts was consistent with innocent conduct, those acts cumulatively, under the totality of circumstances, gave an experienced police officer reason to inquire. *See Terry,* 392 U.S. at 22–23, 88 S.Ct. at 1880–81.

Detective Durst explained the facts that alerted him to potential criminal activity. Shortly after Appellant entered the unknown residence, Durst saw another person peer out of the house "as if trying to look for someone." Durst continued:

Based on my past experiences, as far as myself doing buys or watching other buys go down, the actions of the subject shoving things into his pocket, the paranoid look as far as not wanting to look up at anyone in particular, but keeping his head down, constantly keeping his hand in his pocket. Also, the second subject pacing up and down, watching another person. That's not—that's not really common. Why wouldn't the other person go into the house with him if he was just going to visit a friend?

It's usually, based on my training and experience, when something as far as a drug deal takes place, if a second person is not known in that particular residence they are not welcome there, and if they do go there, then the transaction will not take place simply because the person selling is usually so paranoid that everyone's a cop or everyone's a snitch that they usually won't deal with a second unknown person.

As a narcotics investigator, Detective Durst had completed more than 100 hours in narcotics training, had observed more than 100 illegal drug buys, and had participated in undercover buys. He appropriately drew upon that experience and upon specific "articulable" facts to form the belief that Appellant and his companion were engaged in criminal activity. Given the totality of the circumstances, the juvenile court properly concluded that the investigatory stop was reasonably justified.

## III. THE PROTECTIVE FRISK

■ Although the juvenile separately challenged the legitimacy of the investigatory stop and the protective frisk, the juvenile court treated them as one. In denying Appellant's motion to suppress, the court stated:

[T]his is a stop and frisk under *Terry versus Ohio,* and if an officer ... has a reasonable suspicion of illegal activity, then the person suspected can be stopped, detained, and a pat-down search can be conducted.

In this case, the Court believes that the officers did have reasonable grounds to conduct the stop and frisk, and the reason is that this is unusual activity. If I had seen this activity, I would have thought something weird was going on.... Sounds like illegal activity is going on to me of some kind, and probably a drug transaction. So, they had reasonable grounds to stop and frisk, which is what they did.

The juvenile court assumed in this ruling that a reasonable suspicion of illegal activity entitled Detective Durst not only to stop Appellant and his companion, but also to conduct a protective frisk. This was error. As we explained in *Pima County Juvenile Delinquency Action No. J–103621–01,* 181 Ariz. 375, 377, 891 P.2d 243, 245 (App.1995), the validity of the stop and the validity of the frisk are separate questions. "Neither *Terry* nor its progeny ... authorizes routine patdown searches of persons simply because they have been detained by the police."

Under *Terry,* an officer may lawfully frisk a person for weapons if the officer reasonably suspects that an individual may be armed and presently dangerous to the officer or others. *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85.

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.
>
> [I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27, 88 S.Ct. at 1883 (citations omitted); *accord J–103621–01,* 181 Ariz. at 377, 891 P.2d at 245.

The juvenile court made no such inquiry or finding. Nor does the State acknowledge this separate inquiry in its brief. The State argues only that a "reasonable suspicion [of] wrongdoing" entitled Detective Durst to both stop and frisk.[2] In the juvenile court, however, the State raised the question of safety, asking Detective Durst whether he frisked Appellant "for officer safety reasons." Durst responded affirmatively and explained:

> Based on my training and experience that persons involved in the drug trade often carry weapons to protect themselves and protect their investment . . . and also that [Appellant's companion] was being compliant, and [Appellant] decided he was not going to. I didn't know where he may have been going to flee to or go around the corner or something to that effect, because he was, like I said, very nervous, and I didn't know exactly what he may have had on him or if he had any weapons or anything to that effect.

But on cross-examination, Durst added that Appellant had no weapon in plain view, wore no backpack, had nothing in his hands, made no threatening or furtive gestures, and did not wear bulky or layered clothing (Appellant wore a tank top and baggy cut-off shorts). Durst did not indicate that the neighborhood was a factor in his decision, and the time of day was approximately noon. When asked if he had a reason to believe that he was dealing with an armed and dangerous individual, Durst responded, "Based on my experience, it's always that possibility."

The courts must be receptive to an officer's need to protect himself and others against a potentially armed or dangerous suspect in the course of an investigatory encounter. *See State v. Blackmore,* 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996) (officer reasonably believed burglary suspect was armed and dangerous where officer was alone with the suspect in an alley at dusk, and suspect was hiding); *State v. Vasquez,* 167 Ariz. 352, 355, 807 P.2d 520, 523 (1991) (protective frisk justified where officers responded to domestic call at 2:00 a.m., defendant had been drinking and arguing, and emotions were running high); *State v. Romero,* 178 Ariz. 45, 49, 870 P.2d 1141, 1145 (App.1993) (protective frisk justified where officer was aware that suspects were believed to have recently committed a drive-by shooting).

Yet the courts must not "condone[ ] the use of a 'frisk' to search for evidence of an independent crime." *State v. Collins,* 139 Ariz. 434, 437, 679 P.2d 80, 83 (App.1983). As we stated in *J–103621–01:*

> A *Terry* search is limited to that necessary to discover weapons that might be used to harm the officer or others; it does not permit an officer to undertake a "fishing expedition."

181 Ariz. at 378, 891 P.2d at 246.

In *Ybarra v. Illinois,* 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238 (1979), the Supreme Court held a protective frisk unlawful because the frisk was unsupported by a reasonable belief that the suspect was armed and dangerous. There the suspect was a patron of a tavern where the police were executing a search warrant for narcot-

---

**2.** The State also argues that the seizure of the methamphetamine was lawful under the plain touch rule. The validity of the pat-down, however, is a threshold issue; and because we find the pat-down invalid, we do not reach the issue of plain touch.

ics. The court stressed that the defendant was not a known criminal and made no threatening gestures. And though he wore a long lumber jacket, the Court rejected the assertion that his jacket provided a reasonable ground for believing him armed and dangerous, as lumber jackets were typical attire for the season. *Id.* at 93, 100 S.Ct. at 343.

In *J–103621–01,* a police officer responded to a 9:00 p.m. radio call to investigate two juveniles parked in the parking lot of a mall. 181 Ariz. at 376, 891 P.2d at 244. Driving by the car, the responding officer saw two youthful occupants—one in the front seat, one in the back seat—and "numerous unopened" beer cans in the back. When the officer asked the front seat occupant to step out of the car and patted him down, the officer felt objects that, upon further search, turned out to be a pager and a baggie of marijuana. The radio report had not mentioned weapons, the officer did not inquire about beer or weapons, and the officer did not "engage in any conversation that would have justified a belief that the officer was in danger." *Id.* at 377, 891 P.2d at 245. Instead, the officer "patted down the minor as though it were simply a routine police procedure." *Id.* We found these facts insufficient evidence of apparent danger to support a protective frisk. *Id.* at 377–78, 891 P.2d at 245–46.

In this case, Detective Durst testified that he believed a pat-down was necessary "for officer safety reasons," yet provided no objective facts or observations to support such a belief. Appellant was not a known criminal, there was nothing suspicious about his attire, he made no threatening gestures, and the encounter occurred at midday on a public street. Because the State failed to present specific, articulable facts to support a reasonable suspicion that Appellant was armed and presently dangerous, we conclude that the State failed to establish the constitutional validity of subjecting Appellant to a protective frisk.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the juvenile court erred in denying Appellant's motion to suppress. We reverse the adjudication of delinquency and remand for further proceedings consistent with this decision.

NOYES, P.J., and RYAN, J., concur.