3 P.3d 392

**The STATE of Arizona, Appellee,**

v.

**Steven Alan WYMAN, Jr., Appellant.**

**Nos. 2 CA–CR 99–0283, 2 CA–CR 99–0284, 2 CA–CR 99–0286.**

Court of Appeals of Arizona, Division 2, Department B.

May 31, 2000.

As Corrected June 2, 2000.

**12**

Janet Napolitano, Arizona Attorney General By Paul J. McMurdie and Diane M. Acosta, Tucson, for Appellee.

Emily Danies, Tucson, for Appellant.

ESPINOSA, Chief Judge.

¶ 1 A jury found appellant guilty of possession of a firearm by a prohibited possessor, a class four felony. He admitted that he had two prior felony convictions and that he was on probation at the time of the offense. The trial court sentenced appellant to the presumptive term of ten years' imprisonment.[1] He raises two issues on appeal, challenging the court's denial of his motion to suppress physical evidence based on an illegal search and seizure, and complaining that his sentence is excessive. Because we find that a police officer's repeated requests that appellant stop and talk to him, absent any reasonable suspicion of criminal conduct, constituted a violation of appellant's Fourth Amendment rights which led to the evidence on which he was convicted, we reverse his conviction.

## Background

■■■ ¶ 2 In reviewing the denial of a motion to suppress evidence, we view the facts in the light most favorable to upholding the trial court's ruling. *State v. Sheko*, 146 Ariz. 140, 704 P.2d 270 (App.1985). We review only the evidence presented at the suppression hearing. *State v. Blackmore*, 186 Ariz. 630, 925 P.2d 1347 (1996).

¶ 3 A Payson police officer was in uniform at a Wal–Mart store when a clerk pointed out two men outside whom she described as "acting nervous" when they had seen the officer's patrol car. The two men walked away from the store, looking over their shoulders at the officer. The officer drove his patrol car to within earshot of the two men, stepped out of the car, and yelled out, "Hey, can I talk to you?" The two men ignored the officer and continued walking. The officer yelled again, asking if he could talk to the men, but they continued to ignore him and kept walking. Undaunted, the officer yelled his request at least one more time. It was only at this point, after the officer "had yelled several times at them," that the men, appellant and Lorenzo Jackson, stopped and walked back to the patrol car. The officer requested identification and asked the pair what they were doing. They told him that "they were doing a little drinking and they were going to go shooting." The officer asked appellant if he had any contraband or weapons. Appellant admitted he had a handgun in his pants pocket. The officer then searched appellant and found a pistol. The gun was the basis for the prohibited possessor charge.

¶ 4 Appellant moved to suppress the gun and all statements he had made, arguing that the officer violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution. The trial court denied the motion to suppress the handgun, finding that the officer's contact with appellant had been neither oppressive nor unrea-

---

1. By virtue of the conviction on the instant weapons charge, appellant's probation was revoked. Sentencing on the two prior convictions underlying his revoked probation, Gila County Nos. CR 98–078 and CR 98–162, was consolidated with sentencing on the weapons conviction, No. CR 99–020. The trial court sentenced appellant to

concurrent, mitigated prison terms of nine months and four years for the prior convictions, to be served consecutively to the sentence for the weapons conviction. We have consolidated the appeals in all three cases, but appellant has raised issues pertaining only to the weapons conviction.

sonable, that the officer had not compelled appellant to do anything until he had said he was carrying a firearm, and that, at that point, the officer had had cause to believe that appellant was committing the crime of carrying a concealed weapon. Thus, the court concluded the officer's search for the weapon was not unreasonable.

### Discussion

¶ 5 In reviewing the denial of a motion to suppress evidence based on an alleged Fourth Amendment violation, we defer to the trial court's factual findings, but we review *de novo* mixed questions of law and fact and the trial court's ultimate legal conclusion. *State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 927 P.2d 776 (1996); *State v. Rogers,* 186 Ariz. 508, 924 P.2d 1027 (1996). We agree with the trial court that, once appellant admitted he was carrying a pistol in his pants pocket, the officer had probable cause to believe appellant was committing the crime of carrying a concealed weapon. *See* A.R.S. § 13–3102. As a result, the officer was entitled to arrest and search appellant. *See State v. Randall,* 94 Ariz. 417, 385 P.2d 709 (1963). The question remains whether appellant's admission was the fruit of an earlier constitutional violation.

¶ 6 The Fourth Amendment's protection against unreasonable searches and seizures does not restrict police who have reasonable, articulable suspicion that criminal activity is afoot from stopping a suspect for questioning. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Richcreek,* 187 Ariz. 501, 930 P.2d 1304 (1997). Here, the officer testified that neither he nor the Wal–Mart clerk had observed appellant or Jackson engage in any possibly criminal activity. Nor does the record suggest the officer had any other information the two had done anything illegal. The mere act of looking at and walking away from a police officer does not give rise to reasonable suspicion to stop and detain a person. *See Rogers; see also State v. Stricklin,* 191 Ariz. 245, 955 P.2d 1 (App.1996). Thus, the officer did not have a basis for a valid *Terry* stop. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

¶ 7 Police may, however, approach and question people without implicating the Fourth Amendment, provided that the interaction is consensual. *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, [and] asking him if he is willing to answer some questions." *Id.* at 497, 103 S.Ct. at 1324, 75 L.Ed.2d at 236. The state argues, as the trial court implicitly ruled below, that the encounter in this case was consensual and that, as a result, there was no seizure triggering Fourth Amendment scrutiny. The test is whether, in light of all the circumstances, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565, 569 (1988). Whether a person has been seized by police is a mixed question of law and fact. *In re Maricopa County Juvenile Action No. JT30243,* 186 Ariz. 213, 920 P.2d 779 (App. 1996).

¶ 8 The officer's original request to talk to appellant and Jackson was itself well within the bounds of a consensual encounter. The officer did not draw his gun or otherwise physically compel a response. *Cf. In re Steven O.,* 188 Ariz. 28, 932 P.2d 293 (App.1997) (investigatory stop became seizure for Fourth Amendment purposes when suspect attempted to walk away but was physically restrained by officer). The officer did not demand that appellant and Jackson speak with him; instead, he asked, albeit in a loud, forceful manner. *See United States v. Sealey,* 30 F.3d 7, 8 (1st Cir.1994) (no seizure when undercover officer yelled, "Hey Steven, what's up?" from car). Initially, appellant and Jackson did feel free to ignore the officer and walk away; in fact, this is exactly what they did. However, when the officer incessantly repeated his request after the men refused to respond, he clearly demonstrated that they were not free to ignore him and go about their business.

¶ 9 We find *Maricopa County No. JT30243* instructive. There the police, without articulable suspicion to justify a *Terry* stop, conducted a "round-up" of a group of young people at a parking lot. One juvenile tried to leave, but the officers called out for her to return, saying they "need[ed] to talk to [her]." 186 Ariz. at 215, 920 P.2d at 781. Subsequent questioning led to the discovery that the juvenile possessed tobacco, an offense for which she was ultimately cited. In affirming the granting of the juvenile's motion to suppress the evidence, Division One of this court noted:

> Appellee's response to the officers' arrival was to walk away, which demonstrated to the officers that Appellee wanted to leave. The officers' response to Appellee's expressed intention was to overrule it by calling her back, politely but authoritatively, which demonstrated to the juvenile that the officers did not consent to her departure.

*Id.* at 217, 920 P.2d at 783. Other jurisdictions have reached the same conclusion on similar facts.

¶ 10 In *United States v. Palmer*, 603 F.2d 1286 (8th Cir.1979), an officer who lacked articulable suspicion for a *Terry* stop saw Palmer and a companion walking and called for them to come to his car. Although Palmer complied, his companion did not until the officer repeated himself. The officer then frisked both men, found concealed weapons, and arrested them. The court concluded that, when the officer had "called a second time" to the companion, it "indicate[d] that the pair were not free to continue down the street" and "constituted a sufficient show of authority to restrain appellant's freedom of movement, therefore appellant was seized." *Id.* at 1289.

¶ 11 In *People v. Padgett*, 932 P.2d 810 (Colo.1997), two officers observed Padgett and a companion cross a street. When they got out of their vehicle and asked Padgett if they could speak with him, "Padgett continued walking" away from them. *Id.* at 812.

An officer then "called out a second time," and Padgett "reluctantly" walked back to where the officers were, an encounter that led to the discovery of contraband on his person. *Id.* In upholding the suppression of that contraband, the Colorado Supreme Court relied in part on the officer's second request, finding this encounter to have been an investigative stop unsupported by reasonable suspicion, not a consensual interview. *See also In re D.T.B.*, 726 A.2d 1233, 1234 (D.C.1999) (seizure of juvenile who did not comply with officer's request to "come here" until second request, leading to discovery of contraband, unsupported by reasonable suspicion).

¶ 12 As the foregoing cases demonstrate, a consensual encounter with an uncooperative subject can become a Fourth Amendment seizure when the subject's participation is ultimately gained through more than one request for "voluntary" cooperation. Here, appellant chose to ignore a consensual, *Royer*-type request and was then subjected to two or more renewed requests before he capitulated to the officer's insistence. *Cf. United States v. Wilson*, 953 F.2d 116, 123 (4th Cir.1991) ("The officer's prolonged and persistent questioning after the suspect had conveyed an unequivocal unwillingness to engage in further conversation with the officer is the type of conduct that is proscribed by the Fourth Amendment."). This is the rare case in which a person did choose to ignore and walk away from an officer's request for a voluntary interview, perhaps the only course of action under the law remaining to a pedestrian who does not care to talk to the police. *Cf. Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (reasonable suspicion for *Terry* stop arose when subject ran from police). If the *Royer* paradigm is to have any practical meaning, police must allow a person to go about his or her business when it is clear that the person does not wish to voluntarily cooperate.[2]

¶ 13 At least three times, appellant walked away from the officer. In each instance, the

---

**2.** Of course, officers may renew *Royer*-type requests when a subject does not hear or understand them. Nothing in this record suggests appellant and Jackson did not comprehend the officer's requests; the state agrees they "ignored [the officer's] initial requests to speak to him and continued walking away."

officer's response was to yell at him. A reasonable person in this situation would not have felt free to leave in the face of the officer's repeated summons. Thus, when appellant finally complied with the officer's shouting and went to talk to him at the patrol car, he had been seized for Fourth Amendment purposes. The officer had no reasonable suspicion for an investigatory stop; the seizure was therefore unreasonable. Because the officer obtained appellant's confession and pistol as a direct result of his unreasonable seizure, that evidence should have been suppressed. *See Maricopa County No. JT30243.*

### Disposition

¶ 14 We find the trial court erred in denying appellant's motion to suppress. And, because the weapon seized was the basis of the prohibited possessor charge, we reverse appellant's prohibited possessor conviction in

CR 99–020. Accordingly, we need not address his sentencing issue. Furthermore, because the record shows that appellant's probation in CR 98–078 and CR 98–162 was revoked solely on the conviction in CR 99–020, we vacate the revocation orders and appellant's resulting prison sentences in those matters as well.[3] All three cases are remanded for further proceedings consistent with this decision.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and JOSEPH W. HOWARD, Judge.

---

3. We note that this decision does not bar the probation department from pursuing independent revocation proceedings based on evidence we have found should have been suppressed in CR 99–020. *See State v. Alfaro,* 127 Ariz. 578, 623 P.2d 8 (1980) (exclusionary rule does not apply to probation revocation proceedings).