24 P.3d 610

**The STATE of Arizona,
Appellee/Respondent,**

v.

**Ruben Dario SANCHEZ,
Appellant/Petitioner.**

**Nos. 2–CA–CR–99–0029, 2–
CA–CR–00–0232–PR.**

Court of Appeals of Arizona,
Division 2, Department B.

Feb. 13, 2001.

Redesignated as Opinion and Publication
Ordered April 3, 2001.

---

Janet Napolitano, Arizona Attorney General, by Paul J. McMurdie and Cynthia A. Ryan, Tucson, Attorneys for Appellee.

Barbara LaWall, Pima County Attorney, by Michael A. Colmenero, Tucson, Attorneys for Respondent.

Susan A. Kettlewell, Pima County Public Defender, By Susan C.L. Kelly, Tucson, Attorneys for Appellant/Petitioner.

## OPINION

ESPINOSA, Chief Judge.

¶ 1 A jury found appellant Ruben Dario Sanchez guilty of aggravated driving under the influence of an intoxicant (DUI) and aggravated DUI with a blood alcohol concentration (BAC) of .10 or more, both while his license was suspended or revoked. Citing his prior DUI convictions as aggravating circumstances, the trial court sentenced Sanchez to concurrent, aggravated, six-year terms of imprisonment. The single issue raised on appeal is whether the trial court erred in denying a motion to suppress the results of blood alcohol testing. We have consolidated Sanchez's appeal with his petition for review of the trial court's summary dismissal of his petition for post-conviction relief filed pursuant to Rule 32, Ariz.R.Crim. P., 17 A.R.S., raising a related claim of newly discovered evidence.

¶ 2 Stopped for assorted traffic violations on the evening of March 5, 1998, Sanchez exhibited signs of intoxication. He performed poorly on field sobriety tests and was arrested on suspicion of DUI. He consented to a blood test and was transported to Kino Hospital where two vials of his blood were drawn. The results of testing by the Tucson City County Crime Laboratory revealed a BAC of .261.

¶ 3 Sanchez argues on appeal that the trial court erred in denying a motion to suppress blood evidence, urged jointly by Sanchez and a number of other DUI defendants in unrelated cases. The defendants argued that the quality control methods employed by the Tucson City County Crime Laboratory were inferior to those used at the Department of Public Safety (DPS) Crime Laboratory in

Phoenix. Specifically, the defendants alleged that the Tucson laboratory's practice of preparing a single aliquot[1] from a defendant's blood sample and testing it twice, rather than preparing and testing two separate aliquots of blood, failed to insure reliable test results and violated their rights to due process of law.

¶ 4 The trial court denied the motion to suppress, finding that the Tucson City County Crime Laboratory's method of constituting and testing a single blood sample twice was generally accepted within the relevant scientific community and sufficiently satisfied the requirements of *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). Although the court opined that "it behoove[d] the State to adopt the two sample test technique" employed by the DPS Crime Laboratory as "the only way to scientifically test for human error," it held that *Frye* does not require the state to use the most accurate and reliable technique available "as long as the technique used is generally accepted within the relevant scientific community."

¶ 5 We review rulings on motions to suppress evidence for a clear abuse of discretion. *State v. Spears,* 184 Ariz. 277, 908 P.2d 1062 (1996). We view the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's factual findings, but review its legal conclusions de novo. *State v. Peters,* 189 Ariz. 216, 941 P.2d 228 (1997); *Spears; State v. Hackman,* 189 Ariz. 505, 943 P.2d 865 (App.1997). We find no abuse of discretion here.

¶ 6 Sanchez argues that the trial court should have granted the motion to suppress because the single-sample testing method employed in his case violated the principles set out in *Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121 (1984), and the Due Process Clause of the Fourteenth Amendment. Sanchez's reliance on *Fuenning* is misplaced. Our supreme court in *Fuenning* was interpreting A.R.S. §§ 28–692

---

1. Preparing a sample for testing entails mixing .5 milliliters of blood with 4.5 milliliters of a clear liquid solution of water and acetonitrile referred to as the "internal standard." The analysis of such a "sample facilitates the determination of

the nature of the ingredients, and their quantities, in the whole." 1 J.E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* A–233 (1999).

and 28–692.03, predecessors to the statutes under which Sanchez was charged, A.R.S. §§ 28–1326, 28–1381 through –1385. *See* 1995 Ariz. Sess. Laws, ch. 132, § 3. Unlike its predecessor (§ 13–692.03), § 28–1326 does not require the Arizona Department of Health Services (DHS) to adopt specific, "approved procedures." *Fuenning,* 139 Ariz. at 604, 680 P.2d at 135. Instead, § 28–1326(A) requires DHS to "adopt rules prescribing the approval of methods for the analysis of blood or other bodily substances to determine blood alcohol concentration." [2]

¶ 7 In contrast to the statutory requirements for blood testing, the current statute regarding breath tests does require DHS to "adopt rules *prescribing methods and procedures* for the administration of breath tests to determine alcohol concentration," § 28–1324 (emphasis added), including "[p]rocedures for ensuring the accuracy of results obtained from approved breath testing devices." § 28–1324(2). Thus, when the legislature intended to mandate uniform testing procedures, it expressly required DHS to adopt such procedures. That crime laboratories must employ blood testing methods approved by DHS, however, does not necessarily mean that they are required to employ identical procedures in applying those methods. Although the legislative purpose of § 28–1326(A) and former § 28–692.03(B) is the same, the legislative method for achieving that purpose has changed since *Fuenning* was decided. Section 28–1326(A) does not preclude crime laboratories in the state from using different procedures to test blood or other bodily substances.[3]

■ ¶ 8 Sanchez also alleged that the single-sample procedure employed in his case violated his right to due process, but he failed to develop this argument as required by Rule 31.13(c)(1)(vi), Ariz.R.Crim.P., 17 A.R.S., and has, therefore, waived the issue. *State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983); *State v. Blodgette,* 121 Ariz. 392, 590 P.2d 931 (1979). We note that the record does not establish a due process violation in any event.

■ ¶ 9 Although two vials of Sanchez's blood were drawn to permit him to obtain an independent test, he did not do so. *See* A.R.S. § 28–1388(C). Nor has he alleged that his .261 blood test results were inaccurate or that the dual-sample procedure employed by DPS produced, or would have produced, different results for the same sample of blood. Because he failed to show that the differing procedures in the Tucson and DPS laboratories yielded different blood test results in "otherwise identical situation[s]," the due process clause is not implicated. *See Fuenning,* 139 Ariz. at 602, 680 P.2d at 133. Sanchez's convictions and sentences are, therefore, affirmed.

■ ¶ 10 In his petition for post-conviction relief, Sanchez alleged that, after his trial, the Tucson laboratory "abruptly changed its testing procedure to conform with the duplicate system used by the DPS lab." He argues that the change constituted newly discovered evidence in the form of an admission by the state that the single-sample procedure used to test Sanchez's blood was in fact unreliable. We review the trial court's summary dismissal of the petition for an abuse of its discretion. *State v. Watton,* 164 Ariz. 323, 793 P.2d 80 (1990).

■ ¶ 11 One of the requirements for newly discovered evidence pursuant to Rule 32.1, Ariz.R.Crim.P., is that the evidence have

---

**2.** DHS regulations define "method" as "the scientific process utilized by an analyst or the scientific process utilized by a device to make an alcohol concentration determination." Ariz. Admin. Code R9–14–401(13). In contrast, "procedure" is defined as "a series of operations utilized by the operator when employing an approved device in the determination of alcohol concentration." Ariz. Admin. Code R9–14–401(17).

**3.** We note that, in another case in which another defendant also challenged the same trial court

order at issue here, this court concluded, albeit by somewhat different reasoning, that the trial court had not abused its discretion in denying the joint motion to suppress blood test results. *State v. Molina,* Nos. 2–CA–CR–98–0628 and 2–CA–CR–00–0061–PR (consolidated) (memorandum decision filed October 19, 2000). Arguably that decision constitutes law of the case as to the propriety of the trial court's order. *See* Ariz. R.Crim.P. 31.24(1), 17 A.R.S.; Ariz. R.S.Ct. 111(c)(1), 17A A.R.S.

been in existence at the time of trial but not discovered until after trial. *State v. Bilke*, 162 Ariz. 51, 781 P.2d 28 (1989); *State v. Guthrie*, 111 Ariz. 471, 532 P.2d 862 (1975). Sanchez has not explained how a procedural change occurring after his trial can constitute newly discovered evidence when the "evidence" did not exist at the time of trial.

¶ 12 Even were the other criteria of Rule 32.1(e) for newly discovered evidence met, the trial court found that this "evidence" was unlikely to have altered the outcome of the pretrial motion to suppress or the verdict. The trial court ruled:

> Here, the TPD crime lab's decision to change techniques would not have altered the denial of the motion to suppress. Judge Leonardo ruled that the one sample technique satisfied *Frye* but that "allegations of laboratory error in a given case can be considered by the trier of fact in evaluating the weight of the evidence." The court went on to state that "[f]or this reason, the Court believes it behooves the State to adopt the two sample test technique urged by the defendant even though it is not required by *Frye*." To claim that the technique change is an implicit admission of unreliability after Judge Leonardo suggested in his ruling that the TPD crime lab switch to the two sample technique is unsupportable. Judge Leonardo clearly contemplated the lab changing over to the two sample method when deciding the one sample satisfied *Frye* requirements. Moreover, the change in technique may be unrelated to the ruling. It is not an indication that the former method was somehow unreliable or inaccurate every time a lab changes technique. Technological advances in scientific testing are made all the time without rendering all previous techniques unreliable or inaccurate. The change in technique would not have affected the outcome of the pre-trial motion to suppress.

¶ 13 For the reasons articulated by the trial court, we find no abuse of its discretion in concluding that Sanchez had failed to present a colorable claim of newly discovered evidence. Although we grant the petition for review, we deny relief.

HOWARD, Presiding Judge, and DRUKE, Judge, concur.