214 P.3d 422

**STATE of Arizona, Appellee,**

v.

**Cody Edward CHILDRESS, Appellant.**

**No. 1 CA–CR 07–0967.**

Court of Appeals of Arizona, Division 1, Department C.

July 28, 2009.

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Joseph T. Maziarz, Assistant Attorney General, and Michael Mitchell, Rule 38 Student, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Cody Childress appeals his conviction for driving under the influence of alcohol. Childress asks this Court to find the superior court abused its discretion in denying his motion to suppress evidence obtained from

what he asserts was an illegal seizure. While we agree with Childress that the superior court erred in finding the encounter was consensual, we conclude the stop was reasonable and lawful. We therefore affirm the court's denial of Childress's motion to suppress and his conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY[1]

¶2 Childress was driving a pickup truck in the early morning on August 3, 2006, when Officer R. stopped behind him at a traffic light. Childress had been at a bar with friends, including Adam Petrillo, who was on a motorcycle in the lane next to Childress. Petrillo caught Officer R.'s attention by revving his engine while talking to the pickup's occupants. When the light changed, Petrillo pulled two wheelies. Officer R. initiated a traffic stop of Petrillo, who turned into a shopping center parking lot while Childress continued driving.

¶3 As Officer R. approached Petrillo, Childress drove into the parking lot and stopped behind Petrillo.[2] Concerned for his safety, Officer R. wanted Childress to move in front of him if he chose to remain in the parking lot. Childress testified Officer R. yelled, "the occupants in the black truck, pull in front of me" and pointed in the direction he wanted Childress to move. Officer R. testified, "I didn't say move to that particular space or move over here to where I can come and talk to you in a little bit. I just told them to move so that I could see where they were."

¶4 Childress moved and parked ten or fifteen feet in front of Officer R., who continued his investigation of Petrillo. Petrillo told Officer R. he knew the pickup's occupants. After Officer J. arrived, Officer R. approached the pickup to find out why its occupants were in the parking lot. He testified he also wanted to talk to the pickup's occupants because they were witnesses. While speaking with Childress, Officer R. observed "his eyes were bloodshot and watery," and there was "a faint odor of an alcoholic beverage coming from the interior of the truck." Based on these observations, Officer R. asked Childress if he had consumed any alcohol that evening. Childress said he had consumed one beer. At that point, Officer R. walked away from the truck and returned to Petrillo. Officer R. informed Officer J. he "had observed some signs and symptoms of impairment on [Childress]" and suggested Officer J. might "want to go talk to him."

¶5 As Officer J. approached the pickup, Childress got out and announced his license was suspended. Officer J. recognized Childress from prior incidents. Childress said he had consumed two drinks and agreed to perform field sobriety tests. After Childress failed the tests, Officer J. arrested and transported him to the hospital to have his blood tested. His blood alcohol content was .098 within two hours of driving.

¶6 Childress was charged with two counts of driving under the influence of alcohol. He filed two pretrial motions requesting the court suppress the evidence against him, alleging an illegal seizure and a violation of his right to counsel. The court found there was no violation of Childress's right to counsel,[3] and since the encounter was consensual, there was no unconstitutional seizure. After Childress stipulated to the facts contained in the police report, the court admitted it into evidence, considered the facts, and convicted Childress on both counts. The court imposed a suspended sentence, placing Childress on three years of probation upon his release from prison for a term of four months.

¶7 Childress timely appealed. We have jurisdiction under Arizona Constitution Arti-

---

1. We review only the evidence presented at the hearing on the motion to suppress evidence and view that in the light most favorable to affirming the trial court. *State v. Box*, 205 Ariz. 492, 493, ¶2, 73 P.3d 623, 624 (App.2003); *State v. Sanchez*, 200 Ariz. 163, 165, ¶5, 24 P.3d 610, 612 (App.2001).

2. At the suppression hearing, Childress testified he parked about fifty yards away, while Petrillo gave several estimates ranging from 1500 feet to fifty yards. Officer R. testified Childress stopped "the distance of this courtroom away from me" and "across the parking lot."

3. Childress does not challenge this ruling on appeal.

cle 6, Section 9 and Arizona Revised Statutes ("A.R.S.") §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(1) (Supp. 2008).

## DISCUSSION

 ¶ 8 Childress asserts the superior court abused its discretion when it denied his pretrial motion to suppress evidence which resulted in his DUI conviction. Specifically, Childress argues that Officer R.'s order to move was an unreasonable seizure because Officer R. lacked probable cause or reasonable suspicion to initiate an investigatory stop, and a reasonable person under the circumstances would not have felt free to leave the parking lot. We agree Officer R.'s order to move was not a consensual stop, but in balancing the governmental need for the stop against Childress's interest in remaining where he was, we conclude the stop was reasonable and lawful. We therefore hold the court properly denied Childress's motion to suppress.

 ¶ 9 We review the superior court's ruling on a motion to suppress evidence for abuse of discretion. *State v. Sanchez,* 200 Ariz. 163, 165, ¶ 5, 24 P.3d 610, 612 (App. 2001). An abuse of discretion occurs when the reasons given by the court for its decision are clearly untenable, legally incorrect, or amount to a denial of justice. *State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). Although we view the evidence in the light most favorable to upholding any factual findings, we review de novo the legal conclusions on which the ruling rests. *Sanchez,* 200 Ariz. at 165, ¶ 5, 24 P.3d at 612. We will uphold the court's ruling if legally correct for any reason supported by the record. *State v. Canez,* 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002).

 ¶ 10 Because the Fourth Amendment prohibits only unreasonable seizures, the first step in analyzing an alleged Fourth Amendment violation is determining whether a seizure occurred. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A seizure occurs when a police officer restrains a citizen's liberty "by means of physical force or show of authority." *Id.* at 20 n. 16, 88 S.Ct. 1868. A show of authority includes "the threatening presence of several officers, the display of a weapon ... or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *see also State v. Rogers,* 186 Ariz. 508, 510–11, 924 P.2d 1027, 1029–1030 (1996) (holding seizure occurred where officers who approached defendant said, "we need to talk to you"). In the absence of physical force, a seizure requires submission to a show of authority. *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

 ¶ 11 Whether a citizen was seized by a police officer in the context of the Fourth Amendment depends on the totality of the circumstances and whether a reasonable person under those circumstances would have felt free to leave. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. 1870. Whether an encounter is a detention or consensual does not depend on a police officer's subjective intention, but on whether the officer's conduct would have conveyed to a reasonable person that he was not free to decline the officer's requests or otherwise terminate the encounter. *United States v. Hernandez,* 93 F.3d 1493, 1498 (10th Cir.1996); *cf. Arizona v. Johnson,* —— U.S. ——, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009) (finding an encounter was not consensual when nothing had occurred prior to the frisk that would have conveyed the traffic stop had ended or that the individual was otherwise free to depart without police permission). The reasonable person inquiry is objective and presupposes an innocent person. *Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

¶ 12 Here, Childress asserts Officer R.'s command to move his truck was a seizure because police officers do not issue commands expecting to be ignored. Childress notes Officer R. did not have any reason to initiate a traffic stop of him and argues Officer R. lacked any other reason to initiate an investigatory stop. Childress argues he should have been free to go about his business and Officer R.'s order to move the pickup was an invasion of that freedom.

¶ 13 The court heard testimony from both Childress and Officer R. concerning the officer's command to move. From either version, it is clear Childress was compelled to move from his original location to another in the parking lot. A reasonable person under the circumstances would not have felt free to ignore Officer R.'s command. We conclude Officer R.'s conduct was a show of authority, and Childress submitted to that authority, resulting in a nonconsensual stop.[4]

¶ 14 Determining whether a seizure is reasonable requires balancing the need to seize against the invasion of the individual's constitutionally protected interests. *Camara v. Mun. Ct.*, 387 U.S. 523, 534–37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The outcome depends on the "nature and extent of the governmental interests involved," including the general interest in crime prevention and the officer's specific concern for his own safety. *Terry*, 392 U.S. at 22–23, 88 S.Ct. 1868. We analyze the facts here to see whether the initial stop was reasonable and also whether Officer R. invaded Childress's constitutionally protected interests by approaching his truck and speaking to him.

¶ 15 It is well established that the government has a "legitimate and weighty" interest in officer safety. *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). A traffic stop is an especially dangerous situation for an officer, *Michigan v. Long*, 463 U.S. 1032, 1048, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and it would be unreasonable to require police officers to take unnecessary risks in the performance of their duties, *Terry*, 392 U.S. at 23, 88 S.Ct. 1868; *see also State v. Kaiser*, 204 Ariz. 514, 517, ¶ 6, 65 P.3d 463, 466 (App.2003) (noting police officers may take such steps as are reasonably necessary to protect their personal safety during a traffic stop). In evaluating the reasonableness of a protective seizure the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his

safety was in danger. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.

¶ 16 Here, we first must determine whether it was reasonable for Officer R. to order Childress to move his vehicle. Generally, before a stop an officer must have reasonable, articulable suspicion a person is involved in criminal activity. *Id.* But an officer may conduct a protective stop or seizure on officer-safety grounds when justified by a reasonable, articulable suspicion that a third person poses a danger to those on the arrest scene. *Maryland v. Buie*, 494 U.S. 325, 336, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Maddox*, 388 F.3d 1356, 1365–1366 (10th Cir. 2004); *cf. Johnson*, —— U.S. at ——, 129 S.Ct. at 784 (holding that in a lawful traffic stop, police may detain an occupant of the automobile without additional cause to believe the occupant is involved in criminal activity).

¶ 17 The governmental interest at stake in this case was Officer R.'s safety while conducting a traffic stop of Petrillo. Officer R. testified to reasonable and articulable suspicion of potential danger to himself. He was alone in the parking lot, and he was outnumbered at least three to one by Petrillo and the pickup's occupants, who were outside his field of vision. Officer R. assumed, but was not certain, that the pickup's occupants were somehow connected with Petrillo. He did not know whether they were armed or what their intentions were in following him into the parking lot. As *Long* cautions, traffic stops are especially dangerous situations for officers, and a reasonably prudent person in Officer R.'s position would be warranted in the belief that his safety was in danger. 463 U.S. at 1047, 103 S.Ct. 3469; *see also Terry*, 392 U.S. at 27, 88 S.Ct. 1868. It would therefore be unreasonable to require Officer R. to take the unnecessary risk of allowing the pickup to remain behind him.

---

4. The facts here are distinguishable from *State v. Robles*, 171 Ariz. 441, 831 P.2d 440 (App.1992), in which we held that a defendant was not the subject of a stop at the time of the officers' initial contact, and thus was not seized, when after the defendant had voluntarily parked and exited his car, officers approached him and asked whether he had been drinking. While Childress initially voluntarily parked his car behind Officer R., the officers did not approach him until after he had complied with the order to move to another location.

¶ 18 While requiring Childress to move his vehicle interfered with his liberty, that interference was only minimally intrusive. When balancing Childress's interest in travelling freely and the government's interest in Officer R.'s safety, we conclude that the latter outweighed the former. The order to move was therefore reasonable, and the Fourth Amendment was not violated.

¶ 19 We must next determine whether it was reasonable for Officer R. to approach Childress in the pickup. Without a warrant, police may conduct an investigatory stop if they have reasonable suspicion that criminal activity is afoot. *Rogers,* 186 Ariz. at 510, 924 P.2d at 1029 (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). An officer may also stop a person who appears to have firsthand material information about a recently committed crime. *State v. Watkins,* 207 Ariz. 562, 567, ¶ 20, 88 P.3d 1174, 1179 (App.2004) (holding investigatory stop of defendant as a material witness to a burglary and assault was reasonable).

¶ 20 While we have found no Arizona case directly on point, we find persuasive the decision of the Vermont Supreme Court in *State v. Pierce,* 173 Vt. 151, 787 A.2d 1284, 1288 (2001). In *Pierce,* a police officer observed a Saab driving backward towards a highway off-ramp. *Id.* at 1286. The Saab came to a stop next to the defendant's car at the intersection of the off-ramp and the highway. *Id.* The officer approached the Saab to question its driver and noticed that she smelled of alcohol. *Id.* When the defendant started to drive away, the officer motioned him to stop and said, "Hold on a second, I want to talk to you." *Id.* The officer approached the defendant to question him about the possible DUI of the Saab driver and observed the defendant also smelled of alcohol. *Id.* Although the court found the officer seized the defendant by stopping him, the court held it was reasonable and consistent with the Fourth Amendment under some circumstances for an officer to stop a witness to a crime for questioning. *Id.* at 1287, 1289.

¶ 21 Stressing that the issue does not lend itself to per se rules, the court in *Pierce* found instructive the criteria from § 110.2 of the American Law Institute, Model Code of Pre–Arraignment Procedure (1975). *Id.* at 1288; *see also* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2(b), at 24–25 (4th ed. 2008). The Model Code suggests an officer may reasonably stop a witness when: (1) the officer reasonably believes a crime has just occurred near the area where he finds the person; (2) the officer reasonably believes the person has material knowledge regarding the crime; and (3) stopping the person is reasonably necessary to obtain information about the person or crime. *Pierce,* 787 A.2d at 1288 (quoting *Model Code of Pre–Arraignment Procedure* § 110.2 (1975)).

¶ 22 We agree with *Pierce,* and it guides our analysis here. While Childress correctly asserts Officer R. lacked reasonable suspicion he had committed any criminal activity prior to the stop, Officer R. was permitted to question Childress and his passenger because they were potential witnesses to Petrillo's erratic driving and possible intoxication. Officer R. reasonably believed Petrillo was driving under the influence of alcohol, and he saw Petrillo talking to the pickup's occupants immediately before he pulled two wheelies. Since Petrillo indicated he knew them, Officer R. reasonably believed Childress and his passenger could provide information about Petrillo's conduct that evening. We conclude, therefore, that contacting the pickup's occupants as potential witnesses was reasonable.

¶ 23 Finally, once Officer R. lawfully contacted Childress and was suspicious that he might have been driving while intoxicated, he was free to pass that information on to Officer J. Officer J.'s subsequent communications with Childress based on that shared information were pursuant to a reasonable belief that Childress had been involved in criminal activity. *See State v. Olson,* 134 Ariz. 114, 117, 654 P.2d 48, 51 (App.1982). Moreover, when Officer J. approached, Childress voluntarily stepped out of the pickup and announced that his license was suspended. Officer J. recognized Childress from prior incidents and immediately noticed signs of impairment. Childress agreed to perform field sobriety tests, which he failed. This provided proba-

ble cause to arrest Childress for driving under the influence of alcohol.

¶ 24 Although Officer R.'s order to Childress to move his truck was a stop, in balancing the government's interest in officer safety and Childress's interest in travelling freely, we conclude the stop was reasonable. Approaching Childress to ask why he was in the parking lot was also reasonable, given the continued safety risk Childress and his passenger posed and their potential value as witnesses. Although the superior court erred in finding the encounter was consensual, we agree the evidence supporting Childress's conviction for driving under the influence of alcohol was not obtained through an unconstitutional stop or seizure.

## CONCLUSION

¶ 25 For the above reasons, we affirm the denial of Childress's motion to suppress evidence and affirm his conviction and sentence.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.