NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER ALEXANDER NOTICE, *Appellant.*

No. 1 CA-CR 13-0196
FILED 10-28-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2012112160
The Honorable William L. Brotherton, Jr., Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Kimerer & Derrick, P.C., Phoenix
By Michael D. Kimerer
And Rhonda Elaine Neff
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

**T H O M P S O N**, Judge:

¶1        Christopher Alexander Notice (defendant) appeals from his convictions and sentences for one count of possession of marijuana for sale, a class 2 felony, and one count of sale or transportation of marijuana, a class 2 felony.  For the following reasons, we affirm defendant's convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In March 2012, Phoenix Police responded to an emergency call about an aggravated assault in progress at a Phoenix post office.  Upon arriving, police officers spoke with defendant's girlfriend, who had placed the 911 call.  She told the officers that she, defendant and his nine year old son pulled into the parking lot of the post office where defendant was going to mail a package that he had just picked up from a friend.  Two men wearing black shirts and hats with the word "Narcotics" written on them and badges that witnesses believed to be false approached defendant, pushed him against the back of his vehicle, took the package and started running to their own vehicle.  Defendant chased the two men and managed to retrieve the package before they sped away from the scene.  The girlfriend stated that defendant went straight into the post office to mail the package after the incident, without checking on her welfare or the welfare of his child.

¶3        Two police officers entered the post office to attempt to locate defendant, whom they understood at the time to be the victim of an attempted robbery.  Officers noticed a man matching the description of defendant already at the counter mailing a package, but the man failed to acknowledge the police officers.  The officers waited in the lobby of the post office until defendant exited.  Shortly after, defendant headed out the door, walked past the officers waiting in the lobby, and only after passing them turned and stated, "Were you guys looking for me?"  The officers asked if he was the victim of a crime, and defendant replied that he was but continued walking out the door.

¶4            The officers followed defendant to the parking lot.  Officers asked defendant twice what was in the package.  Both times defendant said that he did not know what was in the package because he was mailing it for a friend. He then stated that he did not know the name or phone number of that friend.  The officers asked defendant if he would go inside to retrieve the package so they could check it for the robbers' fingerprints or DNA, because the post office refused to give it to the officers without defendant's permission.  Defendant told the officers that the robbers "never touched the package," contrary to what his girlfriend told police.  When the officers told him of the conflicting stories, defendant agreed to retrieve the package. Defendant accompanied one police officer inside, identified the package and gave the officer oral permission to take the package back from the mail counter.

¶5            The officer brought the package, which "looked like it was a computer box . . . [with] a little handle on top," to the parking lot.  Through the openings of the handles, officers noticed what looked like a computer tower with its hardware missing.  Officers also noted a smell of dryer sheets coming from the package.   Based on the totality of the circumstances, officers called a K-9 officer to conduct a sniff of the package.  The dog sniffed the package and did not alert.  During that time, an officer checked defendant's record and discovered that he had been arrested for possession of marijuana in 2007, even though defendant stated he had never been arrested.

¶6            Officers then returned to defendant, who appeared very nervous. An officer told defendant that "the gig was up" because officers knew what was in the box and they were going to x-ray it.  Defendant continued to maintain that the package was not his.  Pressed again by the officers, defendant eventually agreed that police could open the box.

¶7            Inside the box, officers found three bricks of marijuana wrapped in wet dryer sheets and multiple layers of cellophane.  Officers arrested defendant.  As they were walking to the patrol vehicle, defendant stated to an officer that he wanted to see a drug detective.

¶8            The state charged defendant with one count of possession of marijuana for sale, a class 2 felony, one count of sale or transportation of marijuana, a class 2 felony, and conspiracy to commit sale or transportation of marijuana, a class 2 felony.  Defendant filed a motion to suppress the contents of the package as fruit of an unlawful and unreasonable detention, and the trial court held a hearing.  The court denied the motion to suppress the package, finding that defendant was not unlawfully detained until the

officer said "the gig is up," and that defendant lacked standing because he disavowed ownership of the package.

¶9        After a jury trial, defendant was convicted of one count of possession of marijuana, a class 2 felony (count one), and one count of sale or transportation of marijuana, a class 2 felony (count two). The trial court sentenced defendant to concurrent sentences of five years for count one and five years on count two, with credit for 152 days of presentence incarceration. Defendant timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) (2003), 13-4031 (2010), and -4033(A) (2010).

## DISCUSSION

¶10       On appeal, defendant argues that the trial court abused its discretion in denying his motion to suppress. He argues that his Fourth Amendment rights were violated because officers unlawfully detained him when they asked him to go back into the post office to retrieve the package without probable cause to do so. Additionally, defendant argues that the search of the package was the "fruit" of his unlawful detention, and that the trial court incorrectly concluded that defendant lacked standing to contest the search. Finally, defendant argues that the trial court erred in applying the inevitable discovery doctrine to deny his motion to suppress.

### A. Standard of Review

¶11       We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *State v. Peterson*, 228 Ariz. 405, 407, ¶ 6, 267 P.3d 1197, 1199 (App. 2011). We defer to the trial court's factual findings, but review the court's ultimate legal determination de novo. *State v. Wyman*, 197 Ariz. 10, 13, ¶ 5, 3 P.3d 392, 395 (App. 2000). "[W]e look only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling . . . ." *State v. Brown*, 233 Ariz. 153, 156, ¶ 4, 310 P.3d 29, 32 (App. 2013) (citation omitted).

### B. Defendant Was Not Unlawfully Detained When Officers Asked Him to Retrieve the Package From the Post Office

¶12       The Fourth Amendment of the United States Constitution guarantees "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well established that not every stop by a law enforcement officer is a violation of this right. *See State v. Childress*, 222 Ariz. 334, 338, ¶ 10, 214 P.3d 422, 426 (App. 2009) ("the Fourth Amendment

prohibits only unreasonable seizures"); *State v. Hutton*, 110 Ariz. 339, 341, 519 P.2d 38, 40 (1974) ("Only unreasonable searches and seizures are proscribed by the commands of the [Fourth] [A]mendment.") (citation omitted).  Police encounters which are consensual do not implicate the Fourth Amendment.  *Florida v. Bostick*, 501 U.S. 429, 434 (1991).  However, what is initially a consensual encounter between a police officer and a citizen can turn into an unlawful seizure under the Fourth Amendment. *Wyman*, 197 Ariz. at 14, ¶ 12, 3 P.3d at 396 ("[A] consensual encounter with an uncooperative subject can become a Fourth Amendment seizure when the subject's participation is ultimately gained through more than one request for 'voluntary' cooperation.").

**¶13**		When asked to decide if an encounter went beyond consent and became an unlawful seizure, we first must determine if and when a seizure occurred.  *Childress*, 222 Ariz. at 338, ¶ 10, 214 P.3d at 426 (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)).  A seizure occurs when officers restrain the liberty of a citizen by means of physical force or a show of authority. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980); *Terry*, 392 U.S. at 19, n.16.  Therefore, we must determine if, by a totality of the circumstances, police conduct would communicate to a reasonable person, innocent of any crime, that he or she is not free to ignore the police presence.  *State v. Winegar*, 147 Ariz. 440, 448, 711 P.2d 579, 587 (1985); *Wyman*, 197 Ariz. at 13, ¶ 7, 3 P.3d at 395.

**¶14**		Defendant argues that he was unlawfully seized under the Fourth Amendment when officers asked him to go into the post office to retrieve the package.  Specifically, defendant argues that officers displayed a show of authority by asking him to move from the parking lot to the post office, by repeating their request after defendant stated that the robbers did not touch the package, and by the presence of at least four uniformed officers and a K-9 officer.  In order for defendant's argument to succeed, we would need to find the trial court abused its discretion in concluding that this evidence did not demonstrate a show of authority that a reasonable person would not feel free to ignore.  *See State v. Guillory*, 199 Ariz. 462, 465, ¶ 10, 18 P.3d 1261, 1264 (App. 2001).  We decline to do so.

**¶15**		In *Mendenhall*, the United States Supreme Court held that some of the factors in considering whether an illegal seizure has occurred include the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone indicating that compliance with the officer's request might be compelled."  446 U.S. at 554.  *See also Bostick*, 501 U.S. at 437 (no seizure occurs when police ask a person questions or even request consent to search

their luggage, as long as the officers do not convey a message that compliance with their request is required). Without such evidence, otherwise inoffensive contact between a citizen and an officer cannot, as a matter of law, constitute a seizure. *Mendenhall*, 446 U.S. at 555. In addition to these factors, the Arizona Supreme Court has also taken into consideration whether a person watched their companion be frisked, and whether police requested that a person accompany them to another location across the street for further questioning. *Winegar*, 147 Ariz. at 448, 711 P.2d at 587. *See also Florida v. Royer*, 460 U.S. 491, 501 (1983) (when police officers retained the identification and airline ticket of the defendant, told him he was suspected of transporting narcotics, and asked him to accompany officers to an airport police room, he was effectively seized under the Fourth Amendment).

¶16 Here, defendant's initial encounter with the officers was consensual because he was first to engage in conversation with officers by asking "Were you guys looking for me?" The fact that officers followed defendant out after he confirmed he was a victim of the crime they were investigating did not change the consensual nature of this encounter. At that point, the officers still needed more information about the men impersonating police who had attempted to rob defendant.

¶17 Defendant argues this situation became an unlawful seizure when another officer approached him outside and asked if he would retrieve the package from the post office. We find that it did not. The officers' conduct did not amount to a show of authority that would have made a reasonable person, innocent of crime, believe he was unable to leave. At the time, there were two police officers speaking with defendant about the robbery when a third officer approached asking about retrieving the package. While all of the officers were armed, none had their weapons drawn, nor did they block defendant from leaving. No evidence was presented at the evidentiary hearing showing that officers used forceful tones in speaking with defendant or that there was any use of physical force that would indicate mandatory compliance. No coercive statements were made to defendant. It is true that defendant and his girlfriend were kept separate, but unlike the defendant in *Winegar*, defendant did not observe his girlfriend being frisked. *See Winegar*, 147 Ariz. at 448, 711 P.2d at 587. Further, unlike *Winegar*, officers did not ask defendant to accompany them to another location for the purpose of further questioning. *See id.* Finally, unlike the facts of *Royer*, officers did not retain any of defendant's belongings when they asked him to retrieve the package, nor did they ask him to accompany them to a police office. *See Royer*, 460 U.S. at 501.

¶18 Although the state argues that the officers "simply asked" defendant if he would retrieve the package and therefore there was no show of authority, we have held that just because officers make a request does not necessarily mean they have not shown authority. *See Winegar*, 147 Ariz. at 447, 711 P.2d at 586 ("The mere fact that a police officer 'asks' a citizen to accompany him rather than commands obedience does not mean that a citizen can reasonably believe he is free to refuse."). Instead, we must also look to see if the circumstances surrounding the question supplied an inevitable answer. *Id.* Here, after defendant initially denied that the robbers touched the box, officers pointed out the discrepancy between that statement and that of defendant's girlfriend. They did not accuse defendant of lying, or directly refute defendant's story. At that point, officers were still investigating an attempted robbery that had just occurred and now had differing statements. After defendant said nothing, officers asked again if he would retrieve the package. Defendant did not refuse, walk away or in any way show that he no longer wanted to cooperate with officers. No unlawful seizure occurred. Defendant's acquiescence was not "acceptance" of an inevitability.

¶19 Because we find that defendant was not seized under the Fourth Amendment when he retrieved the package, we do not need to determine whether probable cause to detain him existed at the time. We also need not address defendant's arguments that he had standing to object to the search, that his consent was invalid because it flowed from an unlawful detention, and that the doctrine of inevitable discovery did not apply.

## CONCLUSION

¶20 Police did not show authority or physical force that would make a reasonable person, innocent of crime, believe that he was not free to leave when they asked defendant to retrieve the package as part of their investigation of the robbery, and the trial court did not abuse its discretion

in denying defendant's motion to suppress. We affirm defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh